UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ERIKA ELKINS, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) Civil No. 9-582-P-H ) |
| WALTER ELKINS, et al., | ) ) |
|     Defendants. | ) |

### AMENDED[1] RECOMMENDED DECISION

Erika Elkins has sued a raft of defendants in connection with her mother's estate that was probated in Bozen/Bolzano, Italy on April 11, 2002, apparently leaving a considerable inheritance to three heirs, Erika Elkins, Walter Elkins, and Erich Elkins. The latter two individuals are named defendants in this lawsuit, but not current movants. Before the court at this time is a motion to dismiss filed by the Portland Police Department (Doc. No. 6) and motion to dismiss filed on behalf of Jeffrey Piampiano, and Drummond, Woodsum & MacMahon (Doc. No. 8). Elkins has also filed a "motion to dismiss Norman, Hanson & Detroy" (Doc. No. 12) asking that this court disqualify that law firm from representing the Portland Police Department. I now recommend that the court grant the defendants' motions and deny Elkins's motion to disqualify.

### The Complaint's Allegations

The complaint in this case is thirty-three pages long and consists of ninety-seven numbered paragraphs and a lengthy introduction. It appears that Elkins alleges that Walter and Erich Elkins connived for the last eight years to prevent Erika Elkins from obtaining possession of her inherited property. In 2004 the imbroglio over the estate spilled over into the Florida

---

[1] The only amendment is the date. The original Recommended Decision was dated January 12, 2009. The correct date of this recommended decision is January 12, 2010.

courts when certain of the named defendants filed a libel action against Erika Elkins in the 6th Circuit Court in Clearwater, Florida. (Compl. ¶ 35.) The defendants in this present lawsuit include at least one Florida judge, Florida attorneys, and others from Florida who were involved in the lawsuit and in the dispute over the estate.

In paragraphs forty-six through fifty-two of her complaint Erika Elkins describes the Portland Police Department's role in these events. Apparently on April 25, 2005, Erika Elkins went to the Portland police seeking assistance regarding what she believed was a computer crime that had been committed against her. When she informed her son that the police would be examining the family computer, her son admitted that he had given his father, another of the named defendants, access to Elkins's password and, thus, to her Juno web account. (Compl. ¶ 46.) According to Erika Elkins, her son's father and his wife had used this computer access to collude with Walter or Erich Elkins in the attempts to deprive Erika Elkins of her rightful inheritance. (Id.) The Portland police maintained in April 2005 that the crime, if any, involving both the minor and the alleged identity theft occurred outside of Maine and they declined to further investigate the matter. (Id. ¶ 47.) On December 20, 2005, a Portland police detective informed Erika Elkins that he had been contacted by a Florida sheriff who informed him that Erika Elkins was stalking a Florida judge. (Id. ¶ 48.) The Portland Police Department refused to investigate the "corruption" allegations made by Elkins, other than placing a couple of telephone calls and concluding that it was a civil matter and that no further investigation was necessary. (Id. ¶ 49.) Elkins's response to the motion to dismiss (Doc. No. 11) concedes that these are the salient allegations against the Portland police, but also notes that paragraphs seventy-nine through eighty-five of the complaint allege a far ranging conspiracy involving the Portland police and the other defendants.

The allegations directed against Attorney Piampiano and his law firm, Drummond Woodsum & MacMahon, are identified by those defendants as follows. They:

- helped Erika Elkins's brother, Walter Elkins, domesticate a Florida judgment in Maine, (Compl. Intro.)
- "harassed" Erika Elkins in some unspecified manner (id.);
- "sabotaged" every single one of Erika Elkins's employment opportunities by taking certain unidentified actions (id. ¶ 26);
- "filed a false affidavit" in March 2007 in an attempt at aiding and abetting Erika Elkins's brother and sister in violation of 18 U.S.C. §§ 3, 1503, and 2315" (id. ¶ 69);
- "blocked" Erika Elkins's efforts to file for bankruptcy by "harassing" her lawyer (id. ¶¶ 70, 73);
- obtained a writ of execution of foreign judgment against Erika Elkins in the amount of $1.3 Million (id. ¶73);
- attached certain real property in Kennebec County, Maine (id.);
- filed an attested copy of a judgment in the Kennebec County Registry of Deeds (id.);
- "obstruct[ed] justice" (id. ¶ 78);
- engaged in "extortion" (id.);
- committed "fraud" (id.)
- committed "theft" (id.)
- engaged in "gender discrimination" (id. ¶ 79);
- denied her equal protection of the laws (id.);
- deprived her of due process (id.);
- "tortured" her (id.);
- breached a duty of care owed to her (id. ¶¶ 80-83);
- and "defamed" her in some unspecified manner (id. ¶ 85).

In addition, Drummond Woodsum & MacMahon violated federal constitutional law and engaged in racketeering by having a representative present at the Section 341 meeting of creditors in her bankruptcy case (id. ¶70) and employed a person named "Bill" who was a close personal friend of the attorney who Erika Elkins employed to handle her bankruptcy (id. ¶ 71). (See Mot. Dismiss at 3-4, Doc. No. 8.) Erika Elkins's response to the motion to dismiss (Doc. No. 13) by Jeffrey Piampiano, and Drummond Woodsum & MacMahon does not suggest that defendants have neglected to include any of the salient points in their recitation of the complaint's allegations.

*The Portland Police Department Motion to Dismiss*

Counsel for the Portland Police Department has made an admirable attempt to parse Erika Elkins's complaint and to isolate the allegations that pertain to the Portland Police Department. As

3

counsel recognizes, because Erika Elkins is a pro se litigant, her complaint is subjected to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972).  As a pro se  litigant, her pleadings also may be interpreted in light of supplemental submissions, such as her response to the motion to dismiss.  Gray v. Poole, c, 1115 (D.C. Cir.2002); Wall v. Dion, 257 F. Supp. 2d 316, 318 (D. Me. 2003).  However, this does not make Elkins's claims against the named defendants a moving target; the four corners of the complaint still dictate the cause of actions and the identification of the defendants.   Erika Elkins has not named a single member of the Portland Police Department as a defendant and, accordingly, there are no members of the police department that are a party to this dispute.  The fact that the defendants have observed that individual police officers involved in Erika Elkins's case are entitled to qualified immunity does not change the contours of her lawsuit.  Tim Gardner, Sergeant Martin, and Detective Haggerty are not named as defendants and have not been served with the complaint.  The fact that her caption recites as defendants "and Others, named herein and yet to be indentified" does not make these individuals into defendants.[2]

I will first consider whether Erika Elkins has successfully pled a constitutional claim against the Portland Police Department/City of Portland.  Erika Elkins's federal claims against the Portland Police Department/City of Portland or any properly named municipal defendant will only be successful if that entity was responsible for an unconstitutional municipal custom or policy.  Monell v. New York City Dept. of Social  Servs., 436 U.S. 658, 690 (1978) ("Local governing bodies ... can be sued directly under [42 U.S.C.] § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and

---

[2]   If these individuals had been named as defendants, the memorandum in support of the motion to dismiss fully explains why the complaint against them would fail, whether it is construed as a constitutional claim, a federal statutory claim, or a Maine tort claim.

promulgated by that body's officers.")(footnote omitted).  With respect to her constitutional claims against this municipal entity, Erika Elkins must ultimately establish two elements:

> First, the custom or practice must be attributable to the municipality, i.e., it must be "so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir.1989). Second, the custom must have been the cause of and "the moving force" behind the deprivation of constitutional rights. Id. at 1157.

Miller v. Kennebec County, 219 F.3d 8, 12 (1st Cir. 2000).

Erika Elkins has not pled any facts that would support a plausible inference that there was a widespread policy within the Portland Police Department of ignoring citizen complaints.  In essence her complaint describes three incidents, all related to the underlying dispute between Erika Elkins and family members over the inheritance.  The Portland police refused to investigate the computer crimes committed by her son and his father.  Next, they informed her that law enforcement officials from Florida had contacted them to report that Erika Elkins was "stalking" a judge in Florida.  And finally, the police, from 2005-2009 refused to do any more investigation than calling the clerk of the Sixth Circuit Court in Clearwater, Florida, and Jeffrey Piampiano, an attorney in Portland.  These three factual allegations simply do not support an inference that there was any widespread policy or custom within the Portland Police Department involving the management of citizen complaints.

In addition, although Erika Elkins speaks in terms of due process and equal protection, she has not presented any *facts* to support a theory that her constitutional rights were violated nor has she presented any *facts* to support her theory that the Portland Police Department engaged in a far reaching conspiracy with the Florida courts and the various individuals she has sued.  Such a claim lacks plausibility on its face and Elkins's conclusory allegations about conspiracies,

negligence, and all manner of wrongdoing does nothing to move her case forward.  To properly allege a claim in federal court, it is not enough merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, __ U.S. __, __, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Erika Elkins has failed to do so and her federal claims fail for that reason.

As for Erika Elkins's tort claims, if she is trying to assert negligence or other tort claims against the Portland Police Department, those claims fail as well.  Governmental entities, such as a municipality or its police department, have immunity for their discretionary acts. 14 M.R.S. § 8104-B.  The decision of whether to investigate and how much investigation a particular case requires is quintessentially a discretionary function.  Norton v. Hall, 2003 Me 118, ¶ 7, 834 A.2d 928, 931.  A decision to respond to a complaint as a noncriminal civil dispute requiring no more investigation than a few phone calls is just as much a discretionary call as was the decision in Norton to respond to the complaint as an emergency.   Neither response can form the basis of tort liability under Maine law.

### *Drummond Woodsum & MacMahon and Piampiano's Motion to Dismiss*

As is apparent from these defendants' recitation of the complaint's allegations, much of Erika Elkins's complaint against Drummond Woodsum & MacMahon and Attorney Piampiano is no more than conclusory rhetoric.  There are no *facts* alleged involving, inter alia, torture or gender discrimination by Drummond Woodsum & MacMahon or Piampiano.  These are merely conclusory labels that Elkins attaches to the defendants' action.  It appears that Attorney Piampiano represented Walter Elkins, and perhaps other of the defendants, in conjunction with various court cases in Maine, including protection from harassment proceedings, actions to enforce a foreign judgment, and an action in the United States Bankruptcy Court initiated by Erika Elkins.  Drummond Woodsum & MacMahon and Piampiano do not appear to have become involved in this matter until early in 2007,

when the litigation apparently moved to Maine. Because Piampiano represented the interests adverse to Erika Elkins, it stands to reason that his positions were adversarial to hers.

These defendants, like the Portland Police Department's counsel, have dissected plaintiff's complaint to attempt to address every conceivable claim that might be wrung from the various conclusory allegations. Erika Elkins's response to their motion to dismiss (Doc. No. 13) is a nonstarter and she has essentially waived opposition to any of their arguments. Apparently she is attempting with this lawsuit to attack the Florida judgment that was obtained against her by Walter Elkins and others. She asserts the judgment is void, without any supporting authority, or even a copy of the judgment, attached to her pleadings. That assertion aside, Elkins does nothing to address the various arguments raised by these defendants in their motion, none of which depends upon the validity of the Florida judgment. It is apparent that the defendants are not state actors in terms of any alleged constitutional violations, that state tort claims of fraud or defamation have not been pled with the specificity required by Federal Rules of Civil Procedure 9(b) or applicable Maine case law, and that the RICO civil conspiracy claim is composed of nothing but bare assertions and conclusory allegations. Although "pro se complaints are to be read generously . . . allegations of conspiracy must nevertheless be supported by material facts, not merely conclusory statements." Slotnick v. Garfinkle, 632 F.2d 163, 165 (1st Cir. 1980); accord Marcello v. Maine, 457 F. Supp.2d 55, 63 (D. Me. 2006).

Finally, turning to defendants' argument that Erika Elkins's bankruptcy filing divests her of standing to bring this lawsuit in her own name, they are entirely accurate and she says nothing to refute their argument. Normally when the real party in interest, in this case the bankruptcy trustee, has not been joined in the action, the court will give the plaintiff a reasonable period of time to accomplish that end or otherwise affirmatively indicate to the court that the action has been formally abandoned by the real party in interest. Rule 17(a) of the Federal Rules of Civil Procedure appears to

contemplate such procedure.  See, e.g., Aquila, LCC v. City of Bangor, 640 F.Supp.2d 92 (D. Me. 2009).  Erika Elkins could be given a reasonable amount of time to join the real party in interest before this court dismisses the action for this reason.  However, in a case such as this one where the plaintiff has not even responded to the argument, and where the allegations do not support a claim in any event, it would be perfectly reasonable to dismiss the complaint for this reason as well.

*Erika Elkins's Motion to Dismiss Norman, Hanson & Detroy, LLC*

Erika Elkins claims she is a personal friend of Adrian P. Kendall and has discussed the "deception of [her] brothers" with him on several occasions.  She alleges that Kendall is employed by Norman, Hanson & Detroy and therefore the law firm has a conflict of interest in this matter.  Counsel have not yet had an opportunity to respond to this motion because Erika Elkins just raised the issue when she responded to their motion to dismiss.  Nevertheless, I recommend that the court deny the motion at this time.  Even if plaintiff's allegation is true, the remedy would not be for this court to "dismiss" Norman, Hanson & Detroy from this litigation based upon the showing that has been made and the current posture of this litigation.  Erika Elkins has not alleged that anything she ever discussed with Kendall has in any way impacted the current motion to dismiss filed by Portland Police Department and there is no reason for this court to interject itself in this ethical dispute at this point in time.

**Conclusion**

Based upon the foregoing I recommend that this complaint be dismissed against the Portland Police Department, Jeff Piampiano, and Drummond, Woodsum & MacMahon.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

January 12, 2010.