UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| ERIKA ELKINS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civ. No. 09-582-P-H |
| | ) | |
| WALTER ELKINS, *et al.*, | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION ON MOTIONS TO DISMISS**

Plaintiff Erika Elkins filed suit in this Court to pursue her claim that her brothers stole her inheritance from her mother's estate in Italy and Florida and that a number of individuals in the Florida legal community, among others, aided and abetted her eldest brother in relation to a "deceptive lawsuit" he brought against her in Florida. (Compl. at 2.) Among the defendants is Judge Nelly Khouzam, who, according to the complaint, presided over a portion of a libel action against Plaintiff in the Circuit Court of the Sixth Judicial Circuit of Florida. (Id. ¶ 35.) Judge Khouzam has filed a motion to dismiss the claims brought against her in this Court based on lack of personal jurisdiction, absolute judicial immunity, and lack of standing on account of Plaintiff's intervening bankruptcy filing. (Doc. No. 51.) In addition to Judge Khouzam are other defendants who are sued here based either on their participation in the Florida litigation, or their association with a participant, and who seek dismissal on the basis of personal jurisdictional or failure to state a claim. These defendants are the Law Firm of Akerman Senterfitt and Attorney Charles Ketchey (Doc. No. 36); Cash Management Solutions, Inc. and four Image Remit entities, plus company principal Arminda Rigakos, the accounting firm of Garcia & Ortiz and

accountant Suzanne Reiber (Doc. No. 38); and Attorney Leslie Conklin (Doc. No. 50). In addition to these defendants, Mary Sarb, a Michigan resident, has requested her dismissal from the case. (Doc. No. 34). The Court referred these and other motions for report and recommendation pursuant to 28 U.S.C. § 636(b)(1). I recommend that the Court grant the motions addressed herein because Plaintiff fails to state a claim against these defendants under the Racketeer Influenced and Corrupt Organizations Act and, in the absence of such a claim, there is no conceivable basis for exercising personal jurisdiction over these defendants.

## THE ALLEGATIONS

Plaintiff alleges that her brother, Walter Elkins, and others have conspired to deprive her of her lawful inheritance from her mother's estate, the principal asset of which is described as two apartments in a building in Bozen/Balzano, Italy. The decedent passed in Italy on October 21, 2001, leaving three heirs, Plaintiff Erika Elkins, older brother Walter Elkins, and younger brother, Erich Elkins. The decedent's Italian estate was probated in Bozen/Balzano in 2002 and the siblings obtained title to the apartments in that year. The core allegations concern the activities of Walter Elkins, who controlled the Italian real property by virtue of the two-thirds ownership interest held by the Elkins brothers, who allegedly conspired to "shun" or squeeze out Plaintiff Erika Elkins.[1] Plaintiff alleges that, over the course of eight years, her brothers refused to take steps to sell one of the apartments so that she could realize an inheritance and denied her an equal share of rental profits generated by the two apartments over that time period. (Compl. ¶¶ 1-8.) Other alleged transgressions concern a Florida money market account and savings

---

[1] The Plaintiffs' allegations are to the effect that the brothers denied her "sole ownership to her property for 8 years" and were able to do so because of "a majority property ownership law in Italy." (Compl. ¶¶ 5-6.) Plaintiff's position appears to be that she was entitled to outright ownership of the smaller of the two apartments, but she does not allege a legal basis for this position.

2

account and certain personal property in Italy held by the decedent at her death and allegedly stolen by Walter Elkins. (Id. ¶¶ 16, 27.)

The Florida money market account and savings account, according to Plaintiff, had a combined value of $50,000. (Id. ¶ 16.) Plaintiff alleges that Walter Elkins's employer, Cash Management Solution, Inc./Image Remit (CMS/IR), threatened to sue Plaintiff after Plaintiff reported the alleged illegal activity of Walter Elkins, who was the company's president. Thereafter, says Plaintiff, Walter Elkins and Arminda Rigakos, owner of CMS/IR,[2] developed a "plot to create a fabricated lawsuit in Florida against Plaintiff, with Judge Nelly Khouzam's assistance, to protect Defendant Rigakos's company . . . from bad publicity." (Id. ¶ 32.) The related allegations sweep in not only Rigakos and CMS/IR, but also Attorney Ketchey and his Akerman Senterfitt firm. The conspiracy allegedly unfolded as follows:

> 33. Judge Khouzam knew Plaintiff neither lived nor worked in Florida and was not in her judicial jurisdiction, so the only way she would be able to get Plaintiff into Florida was by deception in collusion with others, in violation of Title 28, U.S.C., Section 1359.
>
> 34. Between June 10, 2004 and November 24, 2004, Defendant Arminda Rigakos (owner *of CMS/IR),* Defendant Charles Ketchey (her attorney), Defendant Walter Elkins, Defendant Kathryn Elkins, Defendant John Rains, III (their attorney), and Defendant Judge Nelly Khouzam met and planned the fabricated lawsuit, which was to be played out as a probate case in 2005 to hide the $50,000 stolen by Defendant Walter Elkins and Defendant Kathryn Elkins in 2001 and to hide Defendant Walter Elkins' other illegal actions, including the federal offense of transporting stolen funds by wire transfer over state lines, in violation of Title 18, U.S.C., Section 3214. Therefore all participated and were in violation of Title 18, U.S.C., Section 3, and Section 371, and Section 876 and in violation of Title 13, U.S.C., Section 241 and in violation of Title 18, U.S.C., Section 2315.
>
> 35. Defendant Walter Elkins and Defendant Kathryn Sarb Elkins made false statements with the intent to defraud the public and Plaintiff and with the participation of Defendant John Rains, III Esq., and Judge Nelly Khouzam, they

---

[2] According to an affidavit filed by Arminda Rigakos, there are four Image Remit companies and they are distinct from Cash Management Solutions. (Rigakos Aff. ¶ 5, Doc. No. 38-2.)

3

>filed the fraudulent libel suit November 24, 2004 (case no # 04-8317 - C 20), in the 6th Circuit Court in Clearwater, Florida against Plaintiff and had Plaintiff served by summons on November 24, 2004 at her residency at 12 Colonial Road, in Portland, Maine, in violation of Title 28, U.S.C., Section 1359, Title 18, U.S.C., Section 371, and Section 1031 and in violation of Title 13, U.S.C., Section 241 and in violation of Title 18, U.S.C., Section 2315.
>
>36.  For invoking the jurisdiction of the 6th Circuit Court in Clearwater, Florida by deception and fraud, John Rains III and Judge Nelly Khouzam were in violation of Title 18, U.S.C., Section 3 and Title 28, U.S.C., Section 1359 and in violation of Title 13, U.S.C., Section 241.

According to Plaintiff, yet another defendant (one of her own attorneys) joined the conspiracy by persuading her to submit to the jurisdiction of the Florida court and file a counter claim, despite knowing that Florida had no jurisdiction over her.  (Id. ¶¶ 37-38.)  Thereafter, Plaintiff's ex-husband (not among the movants addressed herein) allegedly joined the conspiracy by obtaining the password and login information for Plaintiff's email account and providing it to Walter Elkins, who gained access to Plaintiff's electronic documents.  From there, Walter Elkins's wife allegedly translated two of Plaintiff's emails to her Italian lawyer from the German and "submitted these through Defendants John Rains, III [(Walter Elkins's attorney)] . . . to Defendant Judge Nelly Khouzam in their efforts to intentionally commit fraud and obstruction of justice, and set up a fabricated injunction filed against Plaintiff (false claim), then had the stolen emails submitted to Judge Khouzam as evidence that the injunction had been violated . . . ."  (Id. ¶ 43.)

>Plaintiff then alleges:
>
>45.  Defendant Judge Nelly Khouzam ordered May 2, 2005 a criminal investigation into the theft of these emails and stated "And I believe when issues are presented to the Court that there may be a crime or there may be criminal conduct then the Court is bound to make sure that the proper authorities do an investigation before we proceed", however, Defendant Nelly Khouzam had the original stolen emails in her hand and never submitted of Title 18 U.S.C., Section 3, and Section 1028, and Section 1503, Section 2315, and Section 1001.

Plaintiff's plaint against Judge Khouzam is, in part, that Judge Khouzam never saw to it that someone would investigate Walter Elkins for possible criminal conduct:

> 54. Defendant Judge Nelly Khouzam had no other choice but to order a criminal investigation and stated "And I believe when issues are presented to the Court that there may be a crime or there may be criminal conduct then the Court is bound to make sure that the proper authorities do an investigation before we proceed". However, as Defendant Nelly Khouzam had the original stolen emails in her hand and never submitted them to the proper authorities, the FBI. She simply was an accomplice and who on purpose failed to address the obstruction of justice issue, the break-in of Plaintiffs personal Juno web account and the fraud, although enough evidence was available to order such an investigation, in violation of Title 18, U.S.C., Section 3, and Section 1503.
>
> 55. Judge Nelly Khouzam excused all of Defendant Walter Elkins' actions, including illegal wire transfer of stolen funds over state lines with the one statement, "all took place in Italy", while Defendant Walter Elkins resided in Clearwater, Florida and had 150 employees who could testify to that and his correspondence showed he sent messages from "sunny" Florida, thereby Khouzam was in violation of Title 18, US.C., Section 3, Section 2314, Section 1503, and Section 1028.

The remaining allegations against Judge Khouzam are to the following effect: that Judge Khouzam ruled that Plaintiff's son's testimony about the stolen email account password and emails was hearsay; that Plaintiff wrote a letter to Governor Bush "explaining the legal scam and accusing Judge Nelly Khouzam of fraud"; that Judge Khouzam recused herself thereafter, in December 2005, well in advance of the eventual award of a permanent injunction against Plaintiff and an award of money damages to Walter Elkins and Kathryn Elkins. (Id. ¶¶ 64-66.) Finally, the allegations against Judge Khouzam conclude with the following accusation:

> 77. Defendant Judge Khouzam's fraudulent involvement in Plaintiff's case may hide a greater threat in which politicians have manipulated our judicial system in such a criminal manner that judges no longer uphold the U.S. Constitution, but serve politicians, by dissolving the separation of powers between the Judiciary and the Legislative branches of our government, for Plaintiff's case correlates to Khouzam's Michael Schiavi vs. Bush case and shows a conflict of interest as Khouzam's husband, Morris Silberman, was appointed by Bush to Florida's 2nd

>Court of Appeals in 2001. While Nelly Khouzam and Judge Canady, both on Plaintiff's fraudulent case, had a conflict of interest as both were promoted by Governor Crist in 2008 and public records show Jason Gonzales (previous special counsel to the Bush/Cheney 2004 Campaign, served as general counsel to Florida's Republican Party) was nominated by Jeb Bush to Florida's Judicial Nomination Commission, who then had both Judge Canady (the appointed special counsel to Jeb Bush in 2002) and Khouzam promoted (Canady to the Florida Supreme Court and Khouzam to the Second Court of Appeals) by Governor Charlie Crist in June-July of 2008, after Plaintiff had complained about Khouzam's fraud to Crist and Jeb Bush in 2005.

The allegations against the other Florida defendants whose motions to dismiss are addressed herein are to the effect that they joined in a conspiracy with Walter Elkins and Judge Khouzam to bring or support the allegedly fraudulent lawsuit, in the case of Rigakos and her companies (Id. ¶¶ 32, 34), or else aided and abetted the conspirators in some fashion, such as by serving as witnesses at hearings, in the case of Reiber and her accounting firm of Garcia & Ortiz (Id. ¶¶ 56-57), or by alleged sabotage in the case of Attorney Conklin (Id. ¶ 65).

The allegation against Michigan-resident Ms. Sarb is that she received $3,000 from Walter Elkins that had its source in the decedent's Florida money market account or savings account. (Id. ¶ 25.)

## DISCUSSION

The following discussion addresses five motions to dismiss filed by the following defendants: Judge Khouzam (Doc. No. 51); Mary Sarb (Doc. No. 34); Charles Ketchey and Akerman Senterfitt (Doc. No. 36); Garcia & Ortiz, Suzanne Reiber, Arminda Rigakos, Cash Management Solutions, Inc., and Image Remit (Doc. No. 38); and Attorney Leslie Conklin (Doc. No. 50). As a preface to discussing these motions, I first address Plaintiff's assertion of a racketeering claim, which is the only conceivable basis in the complaint for this Court to even contemplate exercising jurisdiction over the defendants.

**A.     The RICO Claim**

In her complaint, Plaintiff alludes to a collection of federal crimes, which she would not ordinarily have standing to prosecute, as a private citizen, but for the fact that she also cites the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 et seq.[3]  In addition to imposing criminal sanctions, under the RICO statute, "[a]ny person injured in his business or property by reason of a violation of section 1962 . . . may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains . . ." Id. § 1964(c).  RICO's venue and process provision provides that, in actions under section 1964, "in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof." Id. § 1965(b).  Pursuant to this language, RICO defendants may be haled into a district court outside of their forum of residence when the "ends of justice" so require, provided that personal jurisdiction can be established over at least one of the defendants in the case.  Cory v. Aztec Steel Bldg., Inc., 468 F.3d 1226, 1231 (10th Cir. 2006).  The motions addressed herein are not designed to demonstrate that jurisdiction is lacking over every single defendant.  Nor do they address the "ends of justice" standard.  However, they are sufficient to achieve dismissal based on an argument that Plaintiff fails to state a RICO claim. Given this presentation, the Court should "eschew" a difficult RICO jurisdiction and venue issue and dismiss the RICO claim against these defendants on the merits.  Feinstein v. Resolution Trust Corp., 942 F.2d 34, 40-41 (1st Cir. 1991).  See also N. Am. Catholic Educ. Programming

---

[3]     Some of the criminal code provisions cited by Plaintiff cannot give rise to a civil RICO claim, including 18 U.S.C. §§ 371, 876, 1001, 1031.  As a private citizen, Plaintiff does not have standing to prosecute these criminal provisions.  Davit v. Davit, 173 Fed. Appx. 515, 518 (7th Cir. 2006) (unpublished) (citing Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973));  Gill v. Texas, 153 Fed. Appx. 261, 262-63 (5th Cir. 2005) (unpublished) (same).

Found., Inc. v. Cardinale, 567 F.3d 8, 12-13 (1st Cir. 2009) ("Here, we first sweep away the hopeless claims and then focus on personal jurisdiction only as to what remains.")[4]

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint can be dismissed for "failure to state a claim upon which relief can be granted." To decide a motion brought on this basis, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a plausible basis for recovery. Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 320 (1st Cir. 2008). To properly allege a civil action in federal court, it is not enough merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively allege facts that identify the manner by which the defendant subjected the plaintiffs to a harm for which the law affords a remedy. Ashcroft v. Iqbal, __U.S. __, 129 S. Ct. 1937, 1949 (2009).

To state a valid RICO claim, Plaintiff must allege a violation of 18 U.S.C. § 1962. The only conceivably relevant portion of section 1962 is subsection c. Such a claim consists of four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Feinstein, 942 F.2d at 41 (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)). Racketeering activity consists of certain "acts indictable under any one or more of certain specified criminal laws" itemized at section 1961(1)(B). Id. at 42. A defendant is not subject to liability under RICO absent participation in two or more such acts. Id. at 41.

---

[4] As for the distinction between dismissal with prejudice based on failure to state a claim versus dismissal without prejudice based on a lack of personal jurisdiction over one or more defendants, this has not been regarded as an impediment to dismissal on the merits when "the substantive merits underlying the issue are facilely resolved in favor of the party challenging jurisdiction," N. Am. Catholic Educ. Programming Fund, 567 F.3d at 12, particularly where the statute of limitation would bar maintenance of the claim in another jurisdiction, id. at 12. RICO has a four-year statute of limitation, which runs from the date an injury is discovered, Rotella v. Wood, 528 U.S. 549, 552-53 (2000), and the allegations against the defendants in question date to 2005.

In her complaint, Plaintiff alleges, in conclusory fashion, violations of 18 U.S.C. § 1028 (relating to fraud and related activity in connection with identification documents), 18 U.S.C. § 1503 (relating to influencing or injuring an officer or juror in or of any court of the United States), and 18 U.S.C. §§ 2314 & 2315 (relating to interstate transportation of stolen goods or money and sale or receipt of the same, having a value of $5,000 or more). However, Plaintiff's complaint fails to include any factual allegations involving either identification documents or influence exerted over a juror or officer in or of the United States. With respect to the remaining predicate, transporting, selling or receiving stolen goods or money, the factual allegations fail to indicate that that the defendants in question were involved in two or more (or any) predicate acts. The only seemingly relevant allegation is an allegation that Defendant Mary Sarb received $3,000 of allegedly stolen estate funds. However, even this allegation is not relevant to the RICO claim because the value is below the $5,000 threshold of 18 U.S.C. §§ 2314 & 2315. Plaintiff does allege that Walter Elkins transferred stolen funds to Erich Elkins that exceeded the $5,000 threshold, but she does not include any factual, non-conclusory allegations that would suggest a plausible basis for extending a RICO claim to the defendants whose motions are addressed herein. Plaintiff fails to state a plausible RICO claim against these defendants. Because these defendants are not plausibly subject to the RICO claim, they are also entitled to dismissal from the case due to the absence of any remotely viable basis for the Court to exercise jurisdiction over them, as discussed below.

**B.     Judge Khouzam's Motion (Doc. No. 51)**

Judge Khouzam seeks dismissal on three grounds.  The primary ground is lack of personal jurisdiction.  (Khouzam Mot. ¶¶ 13-15.)  The secondary ground is absolute judicial immunity. (Id. ¶¶ 16-20.)  The tertiary ground is premised on the fact that Plaintiff filed bankruptcy between the date of the alleged conspiracy and Plaintiff's filing of her claims in this Court and, therefore, was required to pursue any claim against Judge Khouzam in the bankruptcy court.  (Id. ¶ 21.)  In opposition to the motion, Plaintiff accuses Judge Khouzam of fraud, blames Judge Khouzam for the fact that Plaintiff was served process in Maine and for the fact that Plaintiff's name appeared on the Sixth Judicial Circuit of Florida's website, and argues that Judge Khouzam is personally responsible for all of the negative repercussions of the Florida libel suit. (Response to Khouzam Mot. to Dismiss at 1, Doc. No. 70.)  Plaintiff attaches certain exhibits to her responsive filing, all of which demonstrate that there was a dispute over her mother's estate, including certain funds in Florida.  Plaintiff's legal briefing is limited to an argument that Judge Khouzam committed a "fraud upon the court" and that, therefore, every negative ramification of the entry of judgment against Plaintiff in Florida must be rendered null and void.  (Id. at 2.) Otherwise, Plaintiff states that Judge Khouzam cannot have immunity because she engaged in "criminal acts."  (Id. at 8.)  Plaintiff's responsive filing does nothing to overcome any of Judge Khouzam's dispositive arguments, fails to describe a plausible basis for the RICO claim, fails to introduce a basis for exercising personal jurisdiction over Judge Khouzam on any other claim, such as fraud, and fails to articulate a basis for overcoming Judge Khouzam's absolute judicial immunity.

### *1.     Personal jurisdiction*

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may seek the dismissal of an action based on an absence of "personal jurisdiction."  By invoking Rule 12(b)(2), Judge Khouzam asserts that this Court lacks "the power to require the [defendant] to obey its decrees."  Hannon v. Beard, 524 F.3d 275, 279 (1st Cir. 2008) (internal quotation omitted).  When it comes to exercising jurisdiction over the person of an out-of-state defendant, that defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984) (alteration in original) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  It is Plaintiff's burden to put forward evidentiary proffers that establish the nature and extent of a defendant's forum contacts.  Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992).

Plaintiff alleges a claim of fraud against Judge Khouzam.  In order for this Court to exercise jurisdiction over the person of Judge Khouzam on a state law claim of fraud it would be necessary for Judge Khouzam to have continuous and systematic contacts with the State of Maine such that she could be sued in this forum on any legal claim or else Plaintiff would have to demonstrate that the claim of fraud arose from a specific contact Judge Khouzam made with the State of Maine.  Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 9 (1st Cir. 2009); Platten v. HG Berm. Exempted Ltd., 437 F.3d 118, 135 (1st Cir. 2006).  Plaintiff fails to allege, much less introduce evidence of, any contact Judge Khouzam made with the forum State of Maine that could justify an exercise of jurisdiction over her person on a claim of fraud.  Judge Khouzam's participation as a judicial officer in Florida proceedings does not give rise to a claim in the District of Maine and there is nothing to demonstrate that Judge Khouzam has continuous

and systematic contacts with this forum so that an exercise of jurisdiction over her person could otherwise comport with due process.

### 2. *Absolute judicial immunity*

Beyond requiring that a complaint present sufficient factual allegations to raise a plausible entitlement to relief, Rule 12(b) also permits a defendant to seek dismissal when it appears from the face of the complaint that a dispositive affirmative defense bars either the entire case or an individual claim presented in it. Jones v. Bock, 549 U.S. 199, 215 (2007); Santana-Castro v. Toledo-Davila, 579 F.3d 109, 113-14 (1st Cir. 2009). The allegations against Judge Khouzam involve such a defense.

Plaintiff alleges that Judge Khouzam harmed her by engaging in an act of fraud. Fraud is a state law claim. Under state law, Judge Khouzam has absolute immunity against civil suits for damages arising from her judicial acts. Richards v. Ellis, 233 A.2d 37, 38 (Me. 1967). In fact, she has no civil liability to Plaintiff for erroneous decisions "however evil the motives" are alleged to be. Id. This common law doctrine is recognized by federal courts as well as state courts, even on federal claims. Pierson v. Ray, 386 U.S. 547, 554 (1967). Erroneous decisions are to be corrected on appeal. A judge is not to be subjected to litigation by unsatisfied litigants notwithstanding charges of "malice or corruption." Id.

### 3. *Other obstacles*

The lack of minimum contacts and the existence of a dispositive legal defense are sufficient independent grounds for dismissal. There is no need to address whether Plaintiff has standing to pursue a claim against Judge Khouzam outside of her bankruptcy estate. I do note, however, that Plaintiff is seeking relief barred by the Rooker-Feldman doctrine to the extent she wants this Court to set aside or void judgments entered by a state court in Florida. (See Compl.

¶¶ 89-90.) The Rooker-Feldman doctrine holds that federal courts lack subject matter jurisdiction over claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). See also District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); Miller v. Nichols, 586 F.3d 53, 59 (1st Cir. 2009) (affirming dismissal of claims based on Rooker-Feldman doctrine). This Court lacks jurisdiction over the subject matter of Plaintiff's claims to the extent she requests that it void Florida state court judgments, which is one of the objectives of Plaintiff's claim against Judge Khouzam and is the primary legal cause she advances in response to the motions to dismiss. (See Pl.'s Response to Khouzam Mot. at 2, advancing a "fraud upon the court" theory that allegedly "makes void the orders and judgments" of the Florida court.)

The Court should grant Judge Khouzam's motion to dismiss, dismiss the RICO claim with prejudice, and dismiss the remaining claims with prejudice based upon the doctrine of absolute judicial immunity.

**C.     Mary Sarb's Motion (Doc. No. 34)**

Defendant Mary Sarb requests that all claims against her be dismissed based on lack of jurisdiction over her person, a lack of standing on Plaintiff's part to pursue the claims, and for failure to state a claim. (Sarb Mot. at 1, Doc. No. 34.) Sarb observes that the only allegation explicitly made against her concerns receipt of funds in Michigan sent from Walter Elkins (Compl. ¶ 25) and that there are no factual, non-conclusory allegations that plausibly link her to any racketeering activity, conspiracy, or other unlawful undertaking. (Id. at 3.) Beyond these pleading deficiencies, Sarb argues that the Court cannot exercise jurisdiction over her because

she does not have sufficient contacts with the State of Maine and because the allegations merely involve a transfer of money from an account in Florida to Dearborn, Michigan, where Sarb resides.  (Id. at 3-5.)  Sarb has filed an affidavit explaining that she has been to Maine only once, for a vacation more than 25 years ago, and that she has never transacted any business in Maine or with any person or company in Maine.  (Sarb Aff., Doc. No. 34-1.)

In her consolidated response to the motions to dismiss, Plaintiff fails even to mention Ms. Sarb.  (Pl.'s Response to Sarb Mot., Doc. No. 71, incorporating Pl.'s Response to Khouzam Mot., Doc. No. 70.)  In the absence of evidence of continuous and systematic or claim-specific forum contacts by Ms. Sarb, the Court should grant her motion and dismiss her from the case because there is no plausible basis for Plaintiff's RICO claim against her and an exercise of jurisdiction over Ms. Sarb would offend due process.

**D.     Charles Ketchey and Akerman Senterfitt's Motion (Doc. No. 36)**

Charles Ketchey and the firm he used to work in, Akerman Senterfitt, seek the dismissal of all claims against them based on the same grounds as the prior defendant.  According to his affidavit, Attorney Ketchey represented Cash Management Solutions in the State of Florida and, pursuant to that representation, sent Plaintiff a letter in June 2004 threatening litigation if Plaintiff did not cease making communications to or concerning Cash Management Solutions.  No such litigation ever came to pass between Cash Management Solutions and Plaintiff.  (Ketchey Decl. ¶ 4.)  Attorney Ketchey denies any involvement by himself or by Akerman Senterfitt in the Florida litigation between Walter Elkins and Plaintiff, except for the sharing of the file the firm made in connection with the potential matter between Cash Management Solutions and Plaintiff.  (Id. ¶ 5.)  Attorney Ketchey does not own property in Maine and has no other personal or business-related physical presence in Maine.  (Id. ¶ 6.)  Attorney Ketchey

14

recites an abundance of authority in support of the unremarkable proposition that his solitary letter to Plaintiff was not a sufficient forum contact to subject him to a claim in this Court. (Ketchey Mot. at 10-13.) In response to this motion, Plaintiff fails to describe any continuous and systematic forum contacts by Attorney Ketchey or by Akerman Senterfitt that would support an exercise of general jurisdiction and she also fails to describe any narrower group of contacts with this forum and directly associated with her claims that would support an exercise of specific jurisdiction over these defendants. Indeed, Plaintiff fails even to mention these defendants in her responsive filing. (Pl.'s Response to Ketchey Mot., Doc. No. 71, incorporating Pl.'s Response to Khouzam Mot., Doc. No. 70.) Their motion should be granted because Plaintiff fails to allege a plausible RICO claim against them and otherwise fails to demonstrate the existence of forum contacts that could expose them to litigation in Maine on any other identifiable claim.

### E.   Garcia & Ortiz, Suzanne Reiber, Arminda Rigakos, Cash Management Solutions, and Image Remit's Motion (Doc. No. 38)

These defendants seek dismissal based on the lack of personal jurisdiction. Ms. Reiber, a principal of Garcia & Ortiz, and Ms. Rigakos, CEO of Cash Management Solutions and four "Image Remit" corporations, have submitted affidavits explaining that they are Florida residents, were witnesses in the Florida litigation between Walter Elkins and Plaintiff, and that their respective companies are not Maine corporations and do not conduct business in Maine. Both affiants deny any purposeful contact with Maine in relation to this case. (Reiber Aff. ¶¶ 1-6, Doc. No. 38-1; Rigakos Aff. ¶¶ 1-5, 7, Doc. No. 38-2.) Plaintiff does make reference to both affiants in her responsive filing, but she merely contends that they are liable to her based on their participation as witnesses in the Florida litigation. (Pl.'s Response to Ketchey Mot., Doc. No. 71, incorporating Pl.'s Response to Khouzam Mot. at 2, Doc. No. 70.) For reasons already

explained, the defendants' involvement in the Florida litigation is not a sufficient basis to subject them to a RICO claim or to hale them into the District of Maine on any other claims or theories. Their motion should be granted.

### F. Attorney Leslie Conklin (Doc. No. 50)

Attorney Conklin also wishes to exit this case. He briefs personal jurisdiction and also raises case or claim preclusion and a statute of limitations defense. Plaintiff's responsive filing does not discuss any forum contacts by Attorney Conklin. Attorney Conklin's motion should also be granted based on Plaintiff's failure to state a RICO claim and her failure to deduce any forum contacts that would support an exercise of personal jurisdiction over Attorney Conklin on any other identifiable claims.

## CONCLUSION

For the reasons set forth above, I RECOMMEND that the Court:

GRANT Judge Khouzam's motion to dismiss (Doc. No. 51);

GRANT Mary Sarb's motion to dismiss (Doc. No. 34);

GRANT Charles Ketchey and Akerman Senterfitt's motion to dismiss (Doc. No. 36);

GRANT Garcia & Ortiz, Suzanne Reiber, Arminda Rigakos, Cash Management Solutions, Inc., and Image Remit's motion to dismiss (Doc. No. 38);

GRANT Attorney Leslie Conklin's motion to dismiss (Doc. No. 50) ; and

DISMISS all of these defendants from the case.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being

       served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

          Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

                                                /s/ Margaret J. Kravchuk
                                                U.S. Magistrate Judge

May 7, 2010