UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

ERIKA ELKINS,                )
                             )
         Plaintiff           )
                             )
     v.                      )        Civ. No. 09-582-P-H
                             )
WALTER ELKINS, *et al.*,     )
                             )
         Defendants          )

**RECOMMENDED DECISION ON MOTION TO DISMISS**

According to her complaint, Plaintiff Erika Elkins filed suit in this Court to pursue claims against, chiefly, her brothers Walter and Erich Elkins and her sister-in-law Kathryn Elkins. The claims arise from a long-denied inheritance, allegedly due to defalcation. Along the way, Erika Elkins was adjudged a libeler in a Florida state court proceeding and she is now liable on a judgment in favor of Walter and Kathryn for in excess of one million dollars, part of which consists of an award of punitive damages. Seeking relief from this liability, Ms. Elkins filed a petition in bankruptcy. The bankruptcy proceeding is still pending, according to the Bankruptcy Court docket, but the Bankruptcy Court has ruled that the libel judgment is not dischargeable. Ms. Elkins more recently filed suit in this Court, alleging that her brothers, certain in-laws, her former lawyers, Walter and Kathryn's former and current lawyers, one of Walter's business associates, one of Walter's accountants, a Florida state jurist, and the Portland Police, have conspired in various ways to torture her and to violate her civil rights, chiefly by means of a "deceptive lawsuit" brought by Walter and Kathryn in Florida.[1] (Compl. at 2.) The defendants

---

[1] Although they are not named as defendants, Ms. Elkins also alleges injury from "one of the largest judicial criminal hoaxes that included 11 judges . . . [including 10 Florida state court judges and one Maine state court judge]

have gradually filed motions to dismiss, raising both jurisdictional and substantive challenges, all of which have been referred by the Court for report and recommendation pursuant to 28 U.S.C. § 636(b). Prior recommended decisions, adopted by the Court, have resulted in the dismissal of most defendants from the suit, including Erich Elkins, who was never properly served. The instant recommended decision addresses the motion to dismiss filed by Walter and Kathryn Elkins (Doc. No. 35), the primary antagonists of Erika Elkins's complaint. For reasons that follow, I recommend that the motion be granted and the complaint be dismissed as to Walter and Erika Elkins.

## THE ALLEGATIONS

The allegations Erika Elkins brings against her sister-in-law, Kathryn Elkins, are sparse. In the introductory paragraph of the Complaint she alleges that Kathryn withheld property from her more than 8 years ago, stole Isle Elkins's valuable personal property back in October 2001, and was involved with her husband in the theft of estate funds and rental income. The damages and redress section of the Complaint explains that Erika wants Kathryn to return the following items of personal property: Erika's grandmother's natural pearl necklace, Erika's mother's large silver and American Indian necklaces, Erika's grandfather's gold pocket watch, the family genealogical records, the blueprints of the family home, the Cunradi art works and the crystal vases, all allegedly in Kathryn Elkins's possession. (Compl. ¶ 87.)

Additional allegations against Kathryn Elkins, scattered throughout the Complaint, assert that Kathryn Elkins dissolved Ilse Elkins's bank account in November 2001 following Ilse's death, established a new bank account in which she deposited some of the inheritance, gave Erika none of the inheritance, filed a libel action against Erika in Florida in November 2004 and

---

and additional lawyers . . . who profiled the Plaintiff so no FBI agent would investigate her claim of this fraud, and finally the cover-up by the Portland (Maine) Police and other law enforcement offices both in Florida and Maine, and others yet to be determined and identified, includ[ing] politicians and government officials." (Compl. at 3.)

had Erika served by summons in Portland, Maine, translated two stolen emails, obtained a sizeable judgment against Erika for libel, filed a protection from harassment action in Maine against Erika, and colluded with Bernard and Jennifer Raad to deny Erika her property. (Id. ¶¶ 16, 35, 43, 46, 66, 73.)

As for her elder brother Walter, Erika Elkins contends that he stole certain items from her mother's Italian estate in 2001, hid assets of the estate from an Italian appraiser, badly managed the estate, used rental income from an estate property in Italy to pay his own personal bills, transferred to others some of the money he had received from his mother's estate, filed a deceptive libel lawsuit against Erika in Florida, and obtained a sizeable judgment against her. (*Compl., intro. par.* & ¶¶ 2-31, 34-35, 43-44, 66, 90.) Erika Elkins also alleges that Walter Elkins then contacted a Maine attorney to file a protection from harassment suit against her in the county in which she lives (Cumberland) and then sought, with the help of Maine counsel, to enforce the Florida judgment against her and execute on her property, all in the 2007-2008 timeframe. (Id. ¶¶ 72-73.) According to Erika, Walter orchestrated a criminal hoax or scheme of judicial manipulation which was brought about with the assistance of a number of attorneys (including Erika's own counsel), judges from Florida and Maine, the Portland Police Department, the Federal Bureau of Investigation, and certain unnamed politicians and government officials. (Id. intro. par., ¶¶ 73, 76-77.)

Erika Elkins has filed a 97-paragraph Complaint in which she alleges that Defendants all participated with Walter in a scheme to defraud her. She contends that all Defendants are jointly and severally liable for in excess of $1.5 million, a sum which she alleges is her loss of *potential* earned income on property she hoped to buy with the proceeds of the inheritance and then sell at a profit. (Id. ¶ 74.) She seeks equitable relief by asking this Court to void a permanent

3

injunction entered in another jurisdiction years ago, void the libel judgment entered against her in Florida, order unnamed commercial enterprises to restore her platinum credit rating, order that criminal charges be filed against everyone, and order that certain items of her mother's estate be returned to her. (Id. ¶¶ 87-97.) Finally, she seeks compensatory, punitive, and treble damages against all of the defendants, under the theory that everyone named in her complaint violated federal racketeering law. (Id. ¶ 93.)

## DISCUSSION

Elkins's complaint is not broken down into separate counts. However, the causes appear to be identified in paragraphs 78 through 85. Based on these allegations, Ms. Elkins's allegations can be broken down into three general causes of action: (1) a civil RICO claim; (2) a claim that Defendants conspired to deprive her of her civil rights, allegedly based on gender bias[2]; and (3) a collection of claims based on the alleged commission of state law torts, including defamation and malicious prosecution.[3]

In their motion to dismiss, Walter and Kathryn Elkins invoke Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Rule 12(b)(1) argument that they raise alleges "lack of standing" based on the fact that Erika Elkins filed a bankruptcy petition subsequent to all of the wrongdoings she alleges concerning her mother's estate and the Florida and Maine state court litigation. The Rule 12(b)(6) argument challenges the adequacy of the

---

[2] Ms. Elkins cites 13 U.S.C. § 241, a federal statute relating to a prima facie evidentiary standard dealing with governmental requests for information related to the census. Defendants assume Elkins was referencing 18 U.S.C. § 241, a federal criminal civil rights statute. If that is so, that statute does not provide for a private cause of action. Brian v. Lavigne, 223 F. Supp. 2d 241, 252 (D. Me. 2002). I assume that she means to assert civil rights claims to the extent they are available, which, for *pro se* purposes, is sufficient to raise 42 U.S.C. §§ 1985 & 1986.

[3] Ms. Elkins also makes reference to breach of a standard of care, harassment, theft and other transgressions throughout her complaint. Only defamation and malicious prosecution appear to relate to activity occurring within the State of Maine.

4

pleadings in relation to the various citations and references peppered throughout the complaint and also in relation to racketeering allegations.

### A. Subject Matter Jurisdiction

Walter and Kathryn Elkins request that all of Erika Elkins's claims be dismissed due to her intervening bankruptcy petition. (Mot. at 4-5, Doc. No. 35, incorporating Drummond Woodsum Mot. at 6-8, Doc. No. 8.) According to Walter and Kathryn, the recent bankruptcy petition means that Erika no longer has standing to pursue her prepetition causes of action because they are now part of her bankruptcy estate. Consequently, the argument goes, this Court lacks subject matter jurisdiction over the claims. (Mot. at 4-5.) The argument is sound and Erika Elkins fails to establish that she has standing to pursue her causes against Walter and Kathryn. In addition, there is a Rooker-Feldman concern that the Court should consider *sua sponte*.

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may plead the defense of lack of subject matter jurisdiction by motion to dismiss, prior to filing an answer to a complaint. When a defendant moves to dismiss an action on the ground that the court lacks jurisdiction over the subject matter, the plaintiff has the burden "to prove the existence of subject matter jurisdiction." Aversa v. United States, 99 F.3d 1200, 1209 (1st Cir. 1996). The court is free to consider extrinsic evidence in determining subject matter jurisdiction, whether that evidence is introduced by the plaintiff or by the defendant. Id. at 1210; Marcello v. Maine, 464 F. Supp. 2d 38, 41 (D. Me. 2006); see also 5A C. Wright & A. Miller, Federal Practice and Procedure § 1350 at 213 (2d ed. 1990). Ordinarily, a court should resolve challenges to its exercise of jurisdiction over the subject matter of a case before proceeding to address the merits. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998); Donahue v. City of Boston, 304 F.3d 110, 117 (1st Cir. 2002).

*1. Standing*

Copies of Erika's bankruptcy petition and her assets and liabilities schedules are attached to docket number 8, the motion to dismiss filed by Defendants Jeffrey Piampiano and Drummond Woodsum & MacMahon, which motion and exhibits have been incorporated by reference by Walter and Kathryn. Erika has failed to address the standing issue in her response memorandum. For present purposes, it suffices to say that Erika Elkins filed a petition for bankruptcy on May 7, 2009. (Drummond Woodsum Mot. Ex. 1, U.S. Bankr. Court Docket, Me. (Portland), Petition # 09-20653, Doc. No. 8-1.) All of Ms. Elkins's causes of action predate her petition in bankruptcy. At least, she has not articulated what claims, if any, post-date her bankruptcy petition.[4]

When a bankruptcy petition is filed, all the debtor's interests in property as of the filing date, including any legal claims, automatically become the property of the bankruptcy estate. 11 U.S.C. § 541(a)(1); Taylor v. Freeland & Kronz, 503 U.S. 638, 642 (1992); Payless Wholesale Distribs., Inc. v. Alberto Culver, Inc., 989 F.2d 570, 571 (1st Cir. 1993). The bankruptcy trustee has exclusive standing to pursue causes of action that are property of the bankrupt estate. 11 U.S.C. § 323; Schertz-Cibolo-Universal City v. Wright, 25 F.3d 1281, 1284 (5th Cir. 1994); Lowry v. KTI Specialty Waste Servs. Inc., 2002 ME 58, ¶ 6, 794 A.2d 80, 81 (dismissing case based on lack of standing without notifying trustee first). The trustee may decide to abandon an

---

[4] Whether Ms. Elkins listed her causes of action as assets or not is immaterial for present purposes, given that the Court can take judicial notice that her bankruptcy is still pending in the Bankruptcy Court. However, a review of the schedules filed in support of her bankruptcy petition reflects that, on her Summary of Schedules, Erika listed unsecured liabilities valued at roughly 1.4 million dollars, comprised mostly of the Florida libel judgment in favor of Walter and Kathryn. (Summary of Schedules & Schedule F, Doc. No. 8-2.) On her bankruptcy Schedule B, Erika failed to identify any causes of action against Walter and Kathryn Elkins as among her assets. (Schedule B, Doc. No. 8-2.) She also specifically denied the existence of "other contingent and unliquidated claims of every nature," including "counterclaims of the debtor." (Id. ¶ 21.) She did, however, identify two accounts receivable of $100,000 each for "rent money taken not properly turned over"; one account receivable each for Walter and Erich Elkins. (Id.) Schedule C does not otherwise identify the assets or claim that they have exempt status. (Schedule C, Doc. No. 8-2.)

asset of the estate, including a cause of action. The debtor may also seek an exemption for a cause of action, if available under applicable law. Ball v. Nationscredit Fin. Serv. Corp., 207 B.R. 869, 872 (N.D. Ill. 1997). Absent abandonment or the grant of an exemption, a scheduled asset will revert to the debtor's possession at the close of the bankruptcy proceeding if the trustee takes no action concerning it. However, if the debtor fails to list an item of property as an asset on the asset schedule, the asset remains the property of the estate even upon close of the bankruptcy case. 11 U.S.C. § 554; Bureau v. Gendron, 2001 ME 157, ¶ 11, 783 A.2d 643, 646. "[B]y operation of 11 U.S.C. § 554(c) and (d), any asset not properly scheduled remains property of the bankrupt estate, and the debtor loses all rights to enforce it in his own name." Jeffrey v. Desmond, 70 F.3d 183, 186 n.3 (1st Cir. 1995) (citing Vreugdenhill v. Navistar Int'l Transp. Co., 950 F.2d 524, 526 (8th Cir. 1991)).

In a recommended decision issued January 12, 2010, I indicated that the argument seeking dismissal on the basis of lack of standing, due to the petition in bankruptcy, is "entirely accurate," but suggested that Erika Elkins may have means available to amend her bankruptcy schedules and explore the possibility that the trustee might abandon the instant claims. (Jan. 12, 2010 Am. Report and Rec. Dec. at 7-8, Doc. No. 17.) Based on her failure to respond to the argument, however, I advised the Court that the standing issue justified dismissal. (Id. at 8.) Ms. Elkins has yet to reveal any development on this front in her bankruptcy proceeding. All prepetition causes of action against Walter or Kathryn are part of the bankrupt estate and Erika fails to demonstrate her standing to pursue those causes in this Court. Accordingly, the claims against Walter and Kathryn should be dismissed for lack of subject matter jurisdiction. If, on the other hand, the Court feels it should "affirmatively reach-out for some determination by the

7

Chapter 7 trustee as to the status of the estate's interest in the claims,"[5] rather than dismissing based on a lack of subject matter jurisdiction, it may wish to simply address the merits of Elkins's complaint, particularly as she fails to brief most of the salient challenges raised in the motion to dismiss and briefs only those causes that are outside of this Court's subject matter jurisdiction.

### 2. *Rooker-Feldman*

Access to the electronic docket through PACER reflects that Walter and Kathryn Elkins obtained summary judgment in their favor in the bankruptcy proceeding on a motion requesting that their libel judgments be deemed non-dischargeable pursuant to 11 U.S.C. § 523(a)(6). This order entered in the bankruptcy proceedings on November 9, 2009. Erika Elkins filed the instant action in this Court nine days later. As discussed in a prior recommended decision (Doc. No. 90), the response Ms. Elkins has filed to Defendants' multiple motions to dismiss is a consolidated memorandum, found at docket entry 70, and the main assertion found in the filing is that the libel judgment in the Florida action is null and void because Defendants, including a Florida state court judge, perpetrated a fraud pursuant to a criminal conspiracy to torture or otherwise harm her. Based on her responsive memorandum, it appears as though Ms. Elkins is essentially attempting to obtain here the relief from the Florida judgment that she failed to obtain from the United States Bankruptcy Court. Lack of standing on account of the intervening bankruptcy is not the only obstacle to that objective. The Rooker-Feldman doctrine holds that federal courts lack subject matter jurisdiction over claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court

---

[5] In Guay v. Burack, Nos. 09-cv-217-DBH & 09-cv-253-DBH (D. N.H.), the Court faced a potential issue of judicial estoppel rather than standing, because the bankruptcy trustee abandoned the claim. There is no indication in this case that the bankruptcy trustee is cognizant of Ms. Elkins's elaborate conspiracy theory counterclaims against Walter, Erich, and Kathryn Elkins.

proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). See also District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); Miller v. Nichols, 586 F.3d 53, 59 (1st Cir. 2009) (affirming dismissal of claims based on Rooker-Feldman doctrine). This Court lacks jurisdiction over the subject matter of Plaintiff's claims seeking to void the Florida state court judgment or to premise a claim for damages on an allegation that the judgment is the product of a fraud. Although Erika Elkins's complaint is not limited to her quest to nullify the libel judgment, that objective is the only objective she advances in opposition to the motions to dismiss, which amounts to an abandonment of her other claims.

**B.     Failure to State a Claim**

Walter and Kathryn Elkins also argue that they are entitled to dismissal of the claims against them because Erika Elkins has failed to state viable legal claims in her complaint. Rule 12(b)(6) provides that a complaint can be dismissed for "failure to state a claim upon which relief can be granted." To decide a motion brought on this basis, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a plausible basis for recovery. Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 320 (1st Cir. 2008). Because Erika Elkins is a *pro se* litigant, her pleadings are to be liberally construed and may be interpreted in light of supplemental submissions, such as any response filed in opposition to the motion to dismiss. Wall v. Dion, 257 F. Supp. 2d 316, 318 (D. Me. 2003); Burns v. Town of Lamoine, 43 F. Supp. 2d 63, 68 (D. Me. 1999); Gray v. Poole, 275 F.3d 1113, 1115 (D.C. Cir. 2002). To properly allege a civil action in federal court, it is not

9

enough merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively allege facts that identify the manner by which a defendant subjected the plaintiff to a harm for which the law affords a remedy. Ashcroft v. Iqbal, __U.S. __, 129 S. Ct. 1937, 1949 (2009).

Based on the standing issue already addressed, the Court does not need to reach the 12(b)(6) challenges at this time. Elkins chose in her opposition brief not to address the Rule 12(b)(6) challenges and instead devoted her energy to the claim that the Florida judgment was null and void, a claim which this court cannot entertain.

Walter and Kathryn argue that Erika's civil rights claims are "absurd." (Mot. at 5.) Private citizens can be subject to liability on civil rights conspiracy claims under the Civil Rights Act, 42 U.S.C. §§ 1985, 1986. However, such a claim requires allegations that provide a plausible basis for inferring, among other things, that the alleged conspiracy was motivated by class-based discriminatory animus and was directed toward interfering with protected civil rights. Maymi v. P.R. Ports Auth., 515 F.3d 20, 30 (1st Cir. 2008); Donahue v. City of Boston, 304 F.3d 110, 122 (1st Cir. 2002). Elkins's allegations of a conspiracy are not plausible. Nor is her conclusory allegation that Defendants "acted in concert to commit acts against Plaintiff of psychological violence against women because of her gender." (Compl. ¶ 79.) The Elkins family feud over their mother's possessions and the resulting civil litigation between Walter and Kathryn, as plaintiffs, and Erika Elkins, as defendant, do not depict a conspiracy to deprive Erika of her civil rights motivated by sex- or gender-based animus. Additionally, as Walter and Kathryn assert, there is no plausible basis in the factual allegations for inferring the existence of a conspiracy involving state actors that could give rise to liability for any other theoretical constitutional deprivation.

Erika Elkins has not addressed any of these issues in her responsive memorandum, which would justify dismissal with prejudice, if she had standing to pursue the claims. Beyond these several obstacles, there is a concern here that this kind of family feud over the disposition of family assets simply does not merit RICO consideration. Erika Elkins is the only victim of the alleged activity and the various acts complained of all relate to or arise from a dispute over her share of an estate. There is law suggesting that this kind of scenario simply is incongruous with the enterprise and pattern of racketeering concepts. One would think that this kind of dispute over property would be amenable to an orderly legal resolution in those jurisdictions where the property is found. The fact that it has dragged on for nine years is not, in my view, indicative of a continuing criminal racket. See, e.g., Gamboa v. Velez, 457 F.3d 703, 708-710 (7th Cir. 2006) (reversing denial of motion to dismiss RICO claim that was based on an alleged murder "frame-up" (malicious prosecution) orchestrated by police officers and involving more than one alleged victim, but only one criminal investigation); Midwest Grinding Co. v. Spitz, 976 F.2d 1016, 1025 (7th Cir. 1992) (addressing a "closed-ended scheme [that] has none of the trappings of a long-term criminal operation that carries with it a threat to society"); Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1535 (9th Cir. 1992) (affirming dismissal of RICO claim where allegations involved a number of acts, but only a "single episode having the singular purpose of impoverishing" the plaintiff, the only victim involved, and did not raise a concern of racketeering as a regular way of conducting business); Boone v. Carlsbad Bancorporation, Inc., 972 F.2d 1545, 1556 (10th Cir. 1992) ("Plaintiffs allege what is actually a closed-ended series of predicate acts constituting a single scheme . . . to accomplish a discrete goal . . . directed at a finite group of individuals . . . 'with no potential to extend to other persons or entities.' Thus plaintiffs have not alleged the type of activity that RICO was enacted to address.") (quoting Sil-Flo, Inc. v.

11

SFHC, Inc., 917 F.2d 1507, 1516 (10th Cir. 1990)); Thermodyn Corp. v. 3M Co., 593 F. Supp. 2d 972, 981 (N.D. Ohio 2008) ("Where a single objective is alleged, 'the purported racketeering activity does not bear the markings of the long-term criminal conduct about which Congress was concerned when it enacted RICO.'") (quoting Moon v. Harrison Piping Supply, 465 F.3d 719, 725-26 (6th Cir. 2006)); Meyer Material Co. v. Mooshol, 188 F. Supp. 2d 936, 941-43 (N.D. Ill. 2002) (holding that evidence of multiple illegal acts in furtherance of a single kickback scheme involving one victim does not constitute a pattern of predicate acts). Paraphrasing the Gamboa opinion, "it is not uncommon for [an estate dispute] to develop over the course of several years" and the activities undertaken in the course of that dispute do not pose a threat of "similar misconduct" or "continued criminal activity" outside of that focused dispute. Gamboa, 457 F.3d at 710.

Erika Elkins fails to adequately brief the RICO claim and focuses her entire responsive memorandum on her effort to have the Florida judgment and all subsequent proceedings by Walter and Kathryn declared null and void. In addition to the Rooker-Feldman problem inherent in this effort, there is solid law to the effect that a loser in a state court proceeding "cannot be allowed to mount a collateral attack on otherwise valid and final state court judgments and the rights established therein by subsequently raising those defenses in the disguise of civil RICO claims in federal court." Henry v. Farmer City State Bank, 808 F.2d 1228, 1237 (7th Cir. 1986). Ms. Elkins simply cannot wriggle off the hook of the non-dischargeable libel judgment in this Court or any other federal court by bringing a civil RICO claim designed to collaterally attack the Florida judgment based on wholly conclusory allegations of a widespread criminal conspiracy involving a Florida judge and members of the Florida bar.

Elkins's state law plaints of fraud, defamation, and malicious prosecution are all premised on her allegation that the Florida judgment finding her to be a malicious libeler is built on fraud and, therefore, null and void. For reasons already explained in the subject matter jurisdiction discussion, this federal court does not have jurisdiction to declare the state law litigation null and void.[6]

## CONCLUSION

For reasons set forth above, I recommend that the Court dismiss the claims against Walter and Kathryn for lack of subject matter jurisdiction, because Erika Elkins is not the proper party in interest due to her intervening bankruptcy petition. In the alternative, I recommend that the Court construe Erika Elkins's causes of action in light of her consolidated responsive memorandum and dismiss her claims as impermissible collateral attacks on a state court judgment.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

June 7, 2010

---

[6] I assume that diversity jurisdiction would remain over the state law claims, even if the federal claims were dismissed, because all of the nondiverse defendants have been dismissed at this point. Franklin v. Zain, 152 F.3d 783, 786 n.2 (8th Cir. 1998).